Our next case is No. 24, 1695, Hill v. Defense. Okay, Mr. Branch? Good afternoon, Your Honor. May it please the Court, I'm David Branch. I represent the petitioner, Kai Young-Hee. Two issues in this appeal. The first issue is the due process violation or the due process violations. The second issue is that the decision by the administrative judge lacks substantial evidence to support the decision. Branch, let me ask you a question. In your brief, you seem to devote most of your attention to the due process issue, as far as I can tell. Yes. And then you do talk at the end about the substantial evidence issue. If we were to not agree with you on the due process issues, can you still prevail? In other words, are the due process issues and your substantial evidence claim intertwined or do they stand separately so that one can stand if the other falls? Your Honor, I believe that they are intertwined, and the reason why I say that is it primarily deals with the 2015, the prior decision by the arbitrator on the 2015 issue, and that's the issue. Which leads to the sleeping in the car issue. Yes, sleeping in the car, which was reversed by the arbitrator, but the agency did not fulfill all the requirements required by the arbitrator. Please correct me if I'm wrong, but as I read the briefs, you're not arguing the, what I'll call by way of shorthand, the sleeping in the car issue. As I understand it, your two arguments on appeal relate to the improper conduct, the allegedly false document, and then the conduct inappropriate for an officer, the comments made in the locker room. Is that correct? Yes. So the sleeping in the car issue isn't really relevant to us, is it? Your Honor, I think that the sleeping in the car incident obviously was part, three and four of the charges, and so there's a question of whether we would be here, whether the action would have been taken against him, but for these earlier charges of sleeping in the car. Do you think there's any doubt in the record that there would have been, this case would have been different if they had just thought that they had, I mean, we've got two sleeping incidents, and there's no challenge that one of them was not previously decided by an arbitrator. So even if you take the sleeping incident that you're talking about out of this case, you really think there would have been any difference in the result here? Yes, Your Honor, I do believe that there would have been a difference in the results. Well, how can that be, since it was, the charge was supported by two separate specifications? Who would, one of which would be sufficient? Well, I think the, I think the deciding official, or my understanding from the record, I picked up the case from different counsel, but I believe the deciding official both relied on the sleeping in the car incident, as well as the claims of the false statement and the, well, the false statement and the conduct on becoming an officer. All right. So first on the due process issue, the evidence, at least what was presented to the MSP administrative judge, was that major, we soon know, sent management communications pressing for a decision for the removal of the petitioner, and this was tied in part to the new requests, to new complaints concerning the petitioner. While the proposal was pending, none of this was provided to the petitioner or his counsel, and the petitioner was deprived of an opportunity to respond to these issues or consider these issues. Well, we agree that under our case law, it's relevant only, relevant to whether or not there was a due process violation. If the deciding official considered the matters that were somewhere on his desk or going through e-mails that he was receiving, I mean, isn't there some requirement that he considered that as part of his analysis? Your Honor, I think the test is an objective test. It's whether, it just can't be his subjective statement that, hey, I didn't rely upon it. There needs to be some consideration objectively to whether getting pressure from your supervisor to give me a position, a statement on removal, as well as the other evidence, the fact that you're the deciding official, and now you're investigating the petitioner and considering placing him on leave because you've received some subsequent complaint, and then speaking directly with, here was Officer Smith, the person who was making the complaint and not disclosing any of that. Well, if the factual analysis done by the A.J., which gets deference by us, is that she believed or he believed the deciding official didn't take anything away from his conversation, you've thrown a lot of this in because there are a number of due process allegations. But if the A.J. concluded, one, that the deciding official was credible, where he said he didn't consider this or go into this or consider this in connection with this case, and two, that, anyway, I mean, isn't that relevant if there are findings by the A.J. that accredits what the other side says? Yes. I mean, obviously, yes, Your Honor, it's relevant. But if there is a gap between the evidence that's in the record that was before the A.J. and the A.J.'s decision, and that's what we have here, we have not only the A.J. reaching this decision, there was so much contradictory evidence in the record. We have the recording where Smith is saying, I sent two letters. But isn't that what the A.J. does and what we review for substantial evidence? I mean, they make those are what the hearings are about. There's often conflicting evidence, and the A.J. considers all the conflicting evidence and comes to a conclusion with respect to what's most believable or what is really germane to the ultimate analysis. That's what we do here, right? Yes. We review that deferentially here on appeal, right? Yes. Yes, Your Honor, as I understand it, it doesn't make any difference whether the deciding official relied on it or not, because Stone says that's not the test. It's not a harmless error test. There's not a subjective independence test, and I think you're right. I think that Stone does say that. But the problem is here that Stone and other cases say that knowledge of other events concerning the employment isn't a due process violation. Now, maybe under this FEA case it would come out differently, but that was vacated, something which you don't seem to acknowledge in your brief. And here, in any event, there's no indication here that the superior or supervisor to the deciding official told him to terminate this person. There's just not evidence of that. Your Honor, if we literally read the correspondence from the supervisor where he says, you know, the decision for removal, he didn't say a decision on the proposed removal, but he says, when are we going to get this decision for removal? And when you consider that with the additional facts of, hey, this, we need to investigate the petition. Well, he's not just saying we need to get a decision one way or the other. He doesn't say. I think the exact language that we quoted was decision for the removal. He doesn't say a decision on the proposed removal or a decision on the proposal. It's a decision for removal, and when that's compiled with. What's the appendix site for that? Your Honor. I think it's 216, isn't it? Do you disagree with Mr. Minish with the way the A.J. characterized this colloquy about the decision that she has at the bottom of page 39? If I'm thinking of the issue that you're discussing here. Major Buseno suggested that perhaps the appellant should be placed on administrative leave pending a decision. In response, Deputy Chief Gerald Plummer responded on email and asked why the decision was taking so long to issue. Major Buseno responded Major Wilkins will make it a priority case and provide daily updates. Is that what you're referring to? That's the A.J.'s characterization of it. Do you dispute what she says there? I'm just reviewing it. No, we're not disputing what she says. So that sort of supports, I guess, the proposition that he was just saying decide this case as Judge Dyke was suggesting. I need to check to see if that's the exact site, Your Honor. Well, it is 215. I think Judge Dyke was right on anything added here. I didn't hear the court. It's Appendix 215. Okay. And it says the last sentence is I think it's time for us to consider him for administrative leave before his behavior and final decision is made for his removal. Is that what you're referring to? Yes, Your Honor. And so I think that's essentially our position. All of these conversations were taking place which suggests that they were considering something more than what was in the proposal to remove. Mr. Wessenthal, and please correct me if I'm wrong, the statement that Judge Prost just pointed to, page 215 of the appendix, isn't that statement being made in the context of the fact that there were additional allegations that had been made concerning your client's conduct during the period of investigation? And I guess what's being said here is, well, placing on leave pending notice. Yeah. I mean, is that, that's the way I read this and my conclusion based on what I read before in the case. Is that wrong? No, Your Honor. I think that's correct. I think that supports our position that these are factors or these additional facts that are being considered by the people who are making the decision and the employee or the petitioner is not given first notice of these additional claims, say they're additional charges or additional claims that are being made against you, and that those decisions, those actions are being considered in the final decision. I mean, that's his basic right. You're not saying what it comes down to. You're saying that just the fact that, number one, there were these additional charges, and, number two, that as a result of that, there was a recommendation to place Mr. Hill on administrative leave. You're saying just because of that, that shows prejudice. And that's being communicated to the deciding official. Yes, and it's not being disclosed to the petitioner as the petitioner is, you know, responding or trying to point out reasons to mitigate the penalty. If the penalty is going to be removal, at least give his version of events to these additional facts. If you're saying he's taking these other actions, which should support placing him on administrative leave or may be considered in the removal, at least, at a minimum, they have an obligation to place him on notice that since the proposed removal was issued, these additional facts have come to light and they're going to be considered. They can't just fail to disclose this and then consider these factors in making a final decision. That violates his due process. One final question from you, please. You make a number of due process arguments in your brief and on appeal before us here. If you were reduced to just one of those, what do you think is the most important, in your view, most important due process allegation that you raise that you say is determinative, if it just stood alone? Your Honor, I think the most important due process violation would be the directive from Major Busuno to Mr. Wilkins that essentially other issues have come to light, and when are we getting a decision on his removal? The one we were discussing a minute ago. Okay. And the second issue is the double discipline. I think you touched on it briefly, but the double discipline for the 2015 incident, that the underlying claim is that in 2015 he was already penalized for allegedly sleeping on the job, and that becomes the basis for counts three and four, for the causes of counts three and four. And for the administrative judge to consider that in making the final decision, we believe that precedent prevents the administrative judge from considering the prior decision when the discipline was, the decision was reversed, and the agency did not provide all of the remedies afforded by the prior discipline, the reversal of the prior discipline. Okay. I think we're out of time. Thank you. We'll give you two minutes or so. Mr. Kelly? Good afternoon. May it please the Court. I'll start with the last topic that was under discussion, what was characterized as a directive to remove Officer Hill. As Judge Shaw pointed out, that's not how the administrative judge read that e-mail. The judge read it as a description of a pending decision, not a directive to remove, and that's consistent and supported by substantial evidence. It's consistent with Major Wilkins' testimony about that exchange, and it's on Appendix 38 where the administrative judge recognized that Major Wilkins testified that no one advised him as to a specific penalty that, rather, the decision made regarding the appellant's removal was his own. And we think that the administrative judge's characterization, understanding of that e-mail is supported by that testimony. So how are we supposed to analyze that e-mail and maybe some of the other exchanges? I mean, your friend said there was testimony by the deciding official that said, no, I didn't consider any of this stuff. I relied on what the record was. Is this a credibility determination, or do we apply would a reasonable person have considered these, or would a reasonable person have been felt pressured under these circumstances? Right. I think, in this case, it is a credibility determination. And I recognize that Stone does contain some language that might suggest that, in some cases, the inquiry could be objective. But I think there's also language that suggests that what the deciding official considered is important. And Stone says that due process guarantees are not met if the employee has notice of only certain charges or portions of the evidence and the deciding official considers no material evidence. And I think the importance of what the deciding official considered has been highlighted by some of our recent cases, including Ward and Norris. And in Ward, the Court talked about whether the ex parte communications influenced the deciding official's penalty determination. And in Norris, the Court expressed concern about whether the ex parte communication was a basis for the deciding official's determinations. So I think that that is the crux of the inquiry. And I think that the administrative judge, in this case, did a proper analysis about determining whether there was influence, whether these ex parte communications did factor into the analysis of determining what they determined. I think Norris and those other cases are about whether particular information was relied on, not whether the deciding official received a directive from the superior to take particular action, which is somewhat different. That might be true. In the, I think the Federal Education Association case in which Officer Hill relies was closer in fact to what he views that that communication was, a directive to remove a subordinate. And in this case, in Federal Education Association, the deciding official determined that, testified that there was no influence, that he remained independent. And the arbitrator found that fact, that this was an independent decision. At this Court, there was a panel that essentially disagreed and held that it would be improper to consider the subjective testimony. And that was vacated. So it's not precedential. They did that based on Stone, which says the same thing. Well, I think Stone is perhaps a little bit more nuanced in how the analysis is to be done and does talk about the effect on the deciding official. There is language going both ways. But ultimately, Stone said that the ultimate inquiry is whether the ex parte communication is so substantial and so likely to cause prejudice. Yeah. Right. We don't really need to reach that question here, do we? I mean, given the nature of the e-mail, which is quite unlike what happened in NEA. I think that's right. I think the e-mail, as Judge Schott was raising earlier, was construed by the administrative judge as not a directive to remove, but simply a consideration for administrative leave pending a decision, while a decision remained pending. And that's consistent with the testimony of the deciding official, how the deciding official understood it, that he wasn't influenced in his penalty determination. Well, if you're working in an office and your boss says, in the interim, you're there deciding all your screens on the issues that are before you, and you get word that the subject here has been engaged in continuing or new abusive behavior or terrible behavior, so we're going to have to put him on admin leave, isn't that going to affect? I mean, if you're on the borderline as to whether or not you should remove him or not remove him, and now you get wind of he's done so much wrong, we're going to put him on admin leave, doesn't that affect the way you're going to look at whether you're going to remove him or not? I think for some deciding officials, it could. But in this case, the deciding official testified that it did not influence his decision. Where's that testimony? It's on page 38 of the administrative judge's decision. The witness testified that no one advised him of the actual testimony. It's in the appendix. Let me see if I have it here. Let me check. I think it's on page 403 of the appendix. 403. 403. 403, starting on line 5, this is where that e-mail was being discussed, and this is Major Wilkins testifying about Major Rosreno, and Major Wilkins testified, he does not take, he does not partake in any of the deciding of it. He's not trying to influence my decision. You know, the assumption in a lot of these due process cases is you get a do-over. I mean, in Stone, they sent it back, as I recall, to the AHA to consider these factors. If it's a matter like this, hypothetically, or any of the charges he's made on due process, how do you unwing that bell? Do you send it back down and say he gets to know about the issue, to know about the e-mail beforehand, and so he could put on contrary evidence? I don't know how you unwing some of these bells here. Well, I mean, we're not talking about reversing. I don't think your friend is asking for an outright reversal of this. So what do you do going back? A new deciding official? That could be possibly one option. I mean, we're not viewing it as a new due process violation, so I'll just talk about a potential remedy if we disagree with that ultimate result. But potentially a new deciding official could be one way to remedy this. And this all happened like 10 years ago, right? This all happened like 10 years ago. Yes, that's right. Was this delayed because of the boards not having a quorum? I think it may have been. I'm not entirely sure about that. That's what I suspected. There was some reference to a judge, a board member, recusing himself, I think. Oh, there was a reference to a deciding official. That's why there was never – pardon me if I'm wrong, but I think that's why there was no board decision. We have the AJA's decision became the board decision, but I saw a reference somewhere in the papers to a board member recusing himself.  Yes, that does ring a bell, and I apologize. I cannot recall exactly the details around the recusal, but I think I did see something similar. Just going back to the second due process concern, the second most important one, according to Officer Harrell, the double discipline for the sleeping in the car incident. In our view, that issue is really irrelevant on this appeal because, first of all, there are two specifications for the sleeping in the car charge. He does not challenge the September specification. The administrative judge explained that even if the January specification, the one that he does contend is a due process violation, was reversed, the charge could still be sustained based on the remaining specification. And ultimately, he was not removed for sleeping on duty. He was removed because of the falsification charge. And Major Wilkins, the deciding official, testified that Officer Harrell would have been removed on falsification, and the administrative judge held that even if the agency did err in including the January 2015 sleeping in the car charge, the action would still be sustained because the falsification charge was so important to Officer Harrell's credibility and the lack of confidence that the deciding official had in him going forward. I thought I'd mention that there was testimony. It's believed, suggested that Officer Smith was not credible. In our view, the credibility determinations were done correctly, and there's no basis for this court to overturn them. Officer Smith did reference two letters in some of his testimony, but that was determined by the administrative judge to be two copies of the same letter, and that's consistent with Officer Smith's testimony of that exchange. In our view, there was no due process violation. The charges are supported by substantial evidence, specifically the falsification charge. That came down to a credibility determination, and we do not believe that there would be any basis for this court to invalidate that. We respectfully ask that the court affirm. Okay. Thank you. Mr. Blanch, are you going to come up? Yes. Just briefly, Judge Post's question concerning if a supervising official issues a statement or sends an email to the deciding official that, when are you going to make a decision on this removal? We have these additional issues or complaints being made about this, and I think that there's only one logical conclusion that the deciding official can reach at that point, and that is this is a statement that you should take some action, and we have this proposal to remove this person. We can't even wait until we get a proposal to remove this person. He needs to be removed. These incidents are so serious, he needs to be removed from the workplace immediately. And so that type of communication should be disclosed to a petitioner or to the employee to get the employee to at least address that, if that issue has been planted in the mind of the deciding official. Now, in terms of remedies that could possibly be available, I think at a minimum a new deciding official must be selected to make this decision. Yes, it's been 10 years since the incident, but obviously that's not because of anything that the petitioner did. The petitioner has timely filed his appeals, prosecuted the case, and for whatever reason, because of someone having to recuse themselves or not having a quorum or for whatever reason, there's been a delay. But it's been, the petitioner had 10 years of employment, and then this incident led to his separation. There's, and I'll just touch on this final point about the, we're not asking the court to make a credibility determination, but there are certain gaps in Smith's testimony. We have the recording where he says there were two letters. We have the petitioner's statement that Smith actually said, executed this letter or signed the letter. And it all works. Okay. Okay. Thank you, Mr. Bryant. Thank you. Thank both counsel. The case is submitted.